# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **DARYL JON GOPPERT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 3:16-cv-02739** |
| **v.** | ) | **Chief Judge Crenshaw** |
| | ) | **Magistrate Judge Brown** |
| | ) | |
| **NANCY BERRYHILL,**[1] | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

To: The Honorable Waverly D. Crenshaw, Jr., Chief United States District Judge

## REPORT AND RECOMMENDATION

Pending before the Court is Plaintiff's motion for judgment on the administrative record (Docket Entry No. 11), to which Defendant Commissioner of Social Security ("Commissioner") filed a response (Docket Entry No. 16). Upon consideration of the parties' filings and the transcript of the administrative record (Docket Entry No. 9),[2] and for the reasons given herein, the Magistrate Judge **RECOMMENDS** that Plaintiff's motion for judgment be **GRANTED** and that the decision of the Commissioner be **REVERSED**.

## I. PROCEDURAL HISTORY

Plaintiff, Daryl Jon Goppert, filed an application for Disability Insurance Benefits ("DIB") under Title II and an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act on August 5, 2013, alleging disability onset as of August 1, 2008, due to panic

---

[1]Nancy Berryhill became acting Commissioner for the Social Security Administration on January 23, 2017, and is therefore substituted as Defendant. *See* Fed. R. Civ. P. 25(d).

[2]Referenced hereinafter by page number(s) following the abbreviation "Tr."

attacks, memory loss, depression, posttraumatic stress disorder ("PTSD"), anxiety and sleep problems. (Tr. 16, 70-73, 174, 181). Plaintiff's claim was denied at the initial level on November 6, 2013, and on reconsideration on January 30, 2014. (Tr. 16, 70-77, 88-98, 111, 120). Plaintiff subsequently requested *de novo* review of his case by an administrative law judge ("ALJ"). (Tr. 126-27). The ALJ heard the case on May 27, 2015, when Plaintiff appeared with counsel and gave testimony. (Tr. 16, 31-61). Testimony was also received by a vocational expert. (Tr. 61-67). At the conclusion of the hearing, the ALJ referred Plaintiff to undergo a physical consultative examination. (Tr. 67-68). On August 14, 2015, the ALJ issued a written decision finding Plaintiff not disabled. (Tr. 13-26). That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since August 1, 2008, the alleged onset date (AOD) (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: obesity; degenerative disc disease (DDD); anxiety; and substance addiction disorders in remission (20 CFR 404.1520(c) and 416.920(c).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), i.e., the lifting and/or carrying of 50 pounds occasionally and 20 pounds frequently; standing and/or walking of 6 hours in an 8-hour workday; and sitting of 6 hours in an 8 hour workday, except never climb ladders, ropes, and scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl; he is able to complete simple, detailed, and multi-step tasks, but not executive-level tasks; he is able to maintain concentration for 2 hours at a time with regularly scheduled breaks; no interaction with the

general public; occasional interaction with coworkers and supervisors; he can tolerate gradual, infrequent workplace changes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was 51 years old (an individual closely approaching advanced age) on the alleged disability onset date. The claimant subsequently changed age category to advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as (defined in the Social Security Act, from August 1, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 18, 19, 20-21, 25, 26).

On August 22, 2016, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5), thereby rendering that decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. REVIEW OF THE RECORD

The following summary of the medical record is taken from the ALJ's decision:

In March 2015, it was reported that a 2013 x-ray showed mild to moderate lumbar degenerative changes with spurring. The claimant complained of back pain without radiation and stated that an increased dose of medication helped. He had normal movement in all extremities. Straight leg raising was negative bilaterally. In

October, his back pain flared up, reportedly once a month for 5 days. The medical evidence also revealed that he had been walking 20 minutes, 3 times a day for exercise. (Exhibit 5F, pp 1, 2, 6, 7, 10, 45, 46)

In June 2015, William Robinson II, M.D., performed a CE, which showed all ranges of motion were normal, except for dorsolumbar motion. Straight leg raise test was positive to 60 degrees on the right and 70 degrees on the left. His upper extremity pinch, grip strength, and fine and gross motor manipulation were normal. Upper and lower extremities had full strength (5/5). There was no muscle spasm in the spine and no sensory loss. Due to back pain, he performed heel-to-toe walk with some difficulty. Even so, Dr. Robinson assessed him able to lift 50 pounds occasionally and 20 pounds continuously. This medical opinion strongly supports the RFC finding that he is able to perform lifting and/or carrying of weights consistent with medium work activity (50 pounds occasionally and 25 pounds frequently). (Exhibit 6F)

Regarding obesity, in March 2015, the claimant weighed 267 pounds and was five feet, eleven inches tall. (Exhibit 5F) In June 2015, weight was 262 pounds. (Exhibit 6F, p 2) The medical evidence shows that in 2012, he ambulated independently. (Exhibit 4F, p 11) In 2014, lumbar range of motion (ROM) was normal and straight leg raising (SLR) was negative. He arose from a chair "okay,'" but appeared to walk with some stiffness. (Exhibit 5F) In March 2015, he had normal movement in all extremities and bilateral SLR tests were again negative. (Exhibit 5F) In 2015, he used no assistive walking device. Dr. Robinson reported that, "obesity does not affect very much" and that his standard walking was fairly normal. (Exhibit 6F) Dr. Robinson's clinical findings support a finding that the claimant could perform lifting and/or carrying of weights consistent with medium work activity (50 pounds occasionally and 25 pounds frequently); that he could stand and/or walk for 6 hours in an 8-hour workday; and that he could sit for at least 6 hours in an 8-hour workday. Furthermore, the factors listed in Social Security Ruling (SSR) 02-lp are considered, including the effects of obesity upon his ability to perform routine movement and the necessary physical activity of work and it is concluded that obesity does not prevent him from working. (For additional evidence as to how the claimant performs daily routine movement, see the listed daily activities in the body of this decision at pages 4 and 5.)

### Regarding mental impairment severity:

There are no medical records of mental health treatment from August 1, 2007, to the present. He was apparently last seen on June 21, 2007. (Exhibit 2F, p 2) Evidence mentioned below is from his primary care providers (PCP), other medical sources, and/or the claimant's own reports.

In July 2013, treatment records showed he had panic attacks "in the past" and the claimant reported he had increasing anxiety symptoms. He said he had been yelling and was easily aggravated, that he shook, and felt chest pressure and short of breath. (Exhibit 5F )

In October 2013, E-Ling Cheah, Psy.D., performed a mental CE. Mr. Goppert reported 3 visits to Centerstone Mental Health Center some 5 years earlier; that he had medications prescribed by his PCP for panic attacks and depression. Legal entanglements included a charge regarding accessory to a drug deal 22 years earlier for which he served 3 months; a charge of theft 27 years earlier; and a couple of charges regarding non-payment of child care. He was not currently on probation. Diagnoses included anxiety disorder with mixed anxiety and depressive symptoms. Global assessment of functioning (GAF) scores were 56 to 61, (which are scores generally consistent with mild to moderate impairment). Dr. Cheah assessed mild limitations in every area of mental functioning, except for moderate limitation in the ability to adapt to changes. (Exhibit 3F) This moderate limitation assessed is incorporated into the RFC with the following restriction: he can tolerate gradual, infrequent workplace changes.

In July 2014, the claimant complained of dysthymia[3] and said medications, Vanlafaxine and Alprazolam, worked as far as his mood, but anhedonia[4] continued. (Exhibit 5F, p 16)

In March 2015, the claimant reported he had a panic attack at home. However, Robert Kasper, M.D. reported he had good judgment and normal mood. (Exhibit 5F, pp 1, 2)

In June 2015, the claimant reported panic attacks were "occasional." An examination showed he had normal mood, affect, speech, and thought processes. (Exhibit 6F)

Regarding drug and alcohol issues, in July 2013, the claimant reported he stopped drinking 2 years earlier. (Exhibit 5F) In October 2013, he reported he drank a 12-pack of beer and 7 shots of whiskey every day for 20 years; that his last drink was 3 years earlier (in 2010). In the past, he had used cocaine and methamphetamine "a

---

[3]Dysthymia is "a mood disorder characterized by chronic mildly depressed or irritable mood often accompanied by other symptoms (such as eating and sleeping disturbances, fatigue, and poor self-esteem)." *Dysthymia*, Merriam-Webster Dictionary, (viewed Jan. 17, 2018), http://www.merriam-webster.com/dictionary/dysthymia.

[4]Anhedonia is "a psychological condition characterized by inability to experience pleasure in normally pleasurable acts." *Anhedonia*, Merriam-Webster Dictionary, (viewed Jan. 17, 2018), http://www.merriam-webster.com/dictionary/anhedonia.

couple of times a week ...for about 20 years" with his last use being 11 years earlier. He reported he had never been in a rehabilitation program for substance abuse. (Exhibit 3F)  Mr. Goppert has a significant history of substance abuse, including cocaine, meth, and alcohol, which left him homeless at times, the latest being in 2008, when he was first denied disability.  At the hearing, he testified he last used alcohol 4 or 5 years earlier and quit smoking 3 years earlier.  There is no evidence of more recent substance abuse. Therefore, it is determined his substance issues have been in remission and his other impairments are not disabling.  Thus, he is not disabled, even considering a history of polysubstance abuse.

The claimant has no relevant medical evidence from the AOD of 2008 to 2013.  He had been to the doctor for back pain, but had not received mental health treatment since 2007.  His testimony was credible, as it pertained to his significant history of substance abuse and increased anxiety. However, there are many inconsistencies that weighed against his credibility regarding the severity of his symptoms.  First, at the hearing, the claimant testified he could not leave his room, was scared to death of everything, and could not leave his house without his wife. However, the CE performed after the hearing indicated he lived alone, and there was no note that the claimant was accompanied to the CE.  Despite his testimony of complete fear of everything, he had not had any mental health treatment since 2007.  In 2007, he only went 3 times.  When asked why he did not continue to go for mental health treatment, he said it was because he became irritated when someone asked for his autograph and because he had lost his insurance. He did not ask if he could continue going without insurance and never found another mental health treatment provider. The claimant was first diagnosed with panic attacks and depression in 1997 or 1998, and he was given Xanax and Zoloft at that time, but he did not receive treatment again until 2007.  He was not on mental health medication between 1997 and 2007, and he testified that he self-medicated with alcohol during that time.  The claimant testified he could not work because of fatigue, which was caused by the medication he took for panic attacks. However, he testified he spent hours a day on Facebook, reading, and watching British television.  He testified he talked to his brother on the phone and was able to attend school meetings for his son.  The claimant testified that he had difficulty bending, lifting, and turning, but when asked how much he could lift with pain versus how much he could lift without pain, he said that he could lift 200 pounds with pain and only 15 pounds without pain.  Neve1theless, the claimant is able to do light household chores, including dishes, getting clothes out of the washer or dryer, and he testified that he can lift a gallon of milk and a case of soda. He also said he lifts his microphone stand for exercise.  However, he also testified he has to take muscle relaxers in order to stand.  At his consultative exam following the hearing, Dr. Robinson found the claimant could lift up to 20 pounds continuously and up to 50 pounds occasionally.  This is consistent with the claimant's own testimony regarding his physical capabilities. Dr. Robinson also found the claimant could sit 7 or 8 hours a day for 2 hours at a time, stand 6 to 8 hours for 2 hours at a time, and walk 5 to 8 hours for 2 hours at a time.  (Exhibit 6F).

(Tr. 21-23).

## III. CONCLUSIONS OF LAW

### A. Standard of Review

Review of the Commissioner's disability decision is narrowly limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the right legal standards in reaching the decision. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). "Substantial evidence requires 'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the Commissioner's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387 (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton*, 246 F.3d at 773 (citations omitted); *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) ("As long as

the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess: 'If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion.'") (citation omitted). However, where an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." *Miller,* 811 F.3d at 833 (citation and internal quotation marks omitted).

### B. Administrative Proceedings

The claimant has the ultimate burden of establishing his entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("[T]he claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). The Commissioner applies a five-step inquiry to determine whether an individual is disabled within the meaning of the Social Security Act, as described by the Sixth Circuit as follows:

> (1) a claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings; (2) a claimant who does not have a severe impairment will not be found to be disabled; (3) a finding of disability will be made without consideration of vocational factors if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four; (4) a claimant who can perform work that he has done in the past will not be found to be disabled; and (5)

if a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

*Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007)); 20 C.F.R. §§ 404.1520; 416.920. The claimant bears the burden through step four of proving the existence and severity of the limitations his impairments cause and the fact that he cannot perform past relevant work; however, at step five, "the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . ." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 628 (6th Cir. 2016) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).

The Social Security Administration can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. *See Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010); *Wright v. Massanari*, 321 F.3d 611, 615-16 (6th Cir. 2003). The grids otherwise only function as a guide to the disability determination. *Wright*, 321 F.3d at 615-16; *see also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). Where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through vocational expert ("VE") testimony. *Anderson*, 406 F. App'x at 35; *see Wright*, 321 F.3d at 616 (citing SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983)).

When determining a claimant's residual functional capacity ("RFC") at steps four and five, the Commissioner must consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B), (5)(B); *Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499 (6th Cir. 2014) (citing 20 C.F.R. § 404.1545(e)).

### C. Claims of Error

**1. The ALJ erred in finding that Plaintiff had a high school education.**

Plaintiff argues that the ALJ erred in finding that Plaintiff had a high school education in spite of his testimony that he did not complete the eleventh grade. (Docket Entry No. 12-1, at 3). Defendant contends that Plaintiff's argument has no bearing on the outcome of this action as the ALJ's determination that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform is supported by substantial evidence. (Docket Entry No. 16, at 5).

In his September 5, 2013 disability report, Plaintiff stated that he completed the twelfth grade in June 1974. (Tr. 200). However, at the ALJ hearing, Plaintiff testified that he needed only one more credit to complete his high school education. (Tr. 49). Plaintiff never repeated a grade and never took any special education classes. (Tr. 300). Plaintiff also testified that he was able to read and write, and could read a newspaper. (Tr. 50).

The VE was present for Plaintiff's testimony and testified that based upon Plaintiff's age, education, past work experience and RFC, as hypothesized by the ALJ, Plaintiff could perform jobs as meat clerk, hand packager, and motor vehicle assembler, all of which are unskilled, at the medium exertional level and have a Specific Vocational Preparation ("SVP") level of two. (Tr. 63-66). The ALJ determined that the VE's testimony was consistent with the Dictionary of Occupational Titles. (Tr. 26, 66).

"Specific Vocational Preparation is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  This training may be acquired in a school, work, military, institutional, or vocational environment." *See* DOT, Appendix C - Components of the Definition Trailer, 1991 WL 688702.  Level SVP 2 is "[a]nything beyond short demonstration up to and including [one] month." *Id.*  Jobs with SVP ratings of two are considered unskilled. *See* SSR 82-41, 1982 WL 31389, at *2 (S.S.A. 1982) ("Jobs are unskilled when persons can usually learn to do them in 30 days or less.").  "Unskilled occupations are the least complex types of work." *Id.*

"High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above."  20 C.F.R. §§ 404.1564(b)(4), 416.964(b)(4).  The Commissioner "generally consider[s] that someone with these educational abilities can do semi-skilled through skilled work." *Id.*  The Commissioner "generally consider[s] that a 7th grade through the 11th grade level of formal education is a limited education." *Id.* §§ 404.1564(b)(3), 416.964(b)(3).  "Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." *Id.*

Based upon the record, the Magistrate Judge concludes that the ALJ properly considered the testimony of the VE and properly determined that jobs are available in significant numbers in the national economy that Plaintiff can perform. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) ("Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question

accurately portrays [plaintiff's] individual physical and mental impairments.'") (citation omitted); *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010). These jobs are unskilled and have an SVP level of two. Whether Plaintiff had a twelfth grade education or was one credit short of it would not impact his ability to perform these jobs. Accordingly, the Magistrate Judge concludes that this claim is without merit.

### 2. The ALJ failed to consider the effects of Plaintiff's medications.

Plaintiff argues that the ALJ erred by failing to consider the effects of his medications. (Docket Entry No. 12-1, at 3). In response, Defendant contends that the ALJ properly considered the issue of side effects in assessing Plaintiff's supportable degree of limitations. (Docket Entry No. 16, at 6).

The ALJ is required to consider "[t]he type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms . . . ." 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3) (2015). Allegations of a medication's side effects must be supported by objective medical evidence. *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665-66 (6th Cir. 2004) ("Although Essary testified that she suffered from dizziness and drowsiness as a result of her medications, Essary's medical records make no indication that Essary reported such side effects to any of her physicians. Thus, based on the record before him, the ALJ did not err in finding that Essary suffered no adverse side effects from her medications." (citing *Steiner v. Sec'y of Health and Human Servs.*, 859 F.2d 1228, 1231 (6th Cir.1987))).

The ALJ noted that, although Plaintiff testified that he could not work because of fatigue caused by medication that he took for his panic attacks, Plaintiff spent hours a day on Facebook and reading and watching television. (Tr. 23, 59). Plaintiff does not cite to any medical records that

show that he reported to medical providers about any alleged side effects from his medications. A review of Plaintiff's medical records do not show that Plaintiff regularly complained of any significant side effects caused by his medications to his medical providers. In fact, on September 24, 2013, Plaintiff reported to Dr. Kasper that he did not have any side effects from his medications. (Tr. 365). "The Sixth Circuit has found that where medical records give no indication that a plaintiff reported side effects of medications to any physician, the ALJ does not err in finding the plaintiff suffered no adverse effects from the medications." *Young v. Colvin*, No. 2:12-CV-00050, 2014 WL 3724844, at *6 (M.D. Tenn. July 25, 2014), *aff'd* (Feb. 26, 2015) (citing *Essary*, 114 F. App'x at 665-66). Accordingly, the Magistrate Judge concludes that this claim is without merit.

### 3. The ALJ erroneously discounted the treatment of Dr. Kasper.

Plaintiff asserts that the ALJ erred in discounting the treatment of his treating physician, Dr. Kasper, because he is not a mental health expert. (Docket Entry No. 12-1, at 3). Plaintiff's assertion is unclear and undeveloped. The only reference to Dr. Kasper is in the section of Plaintiff's brief entitled, "Statement of the Case," where Plaintiff states:

> The medical records concerning his treatment at Premier Medical Group by Dr. Robert Kasper indicates that he is and has been taking prescribed narcotics for his pain, muscle relaxers and medication for his anxiety and depression. [TR 212, 334, 331, 356] Even though the ALJ discounted the prescriptions for mental issues, it appears generally that they do help the claimant, and his complaints of these issues for years back up the need for some treatment for his anxiety, panic attacks and depression. [TR 426]Further, Dr. Kasper is justified in treating his back pain. Mr. Goppert testified that this had helped him, even with increased dosages. [TR 5F 3/10/15] This is supported by the X rays of Mr. Goppert's lumbar and thoracic spine. [TR 374 and 376] These X rays done in 2013 show "multilevel degenerative disc changes of mild to moderate severity of lumbar spine and mild severity of thoracic spine with narrowing and anterlateral osteophytic spurring."

(Docket Entry No. 12-1, at 3).

A court is not obligated on judicial review to formulate arguments on a plaintiff's behalf. *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). "'It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" *Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014) (citing *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) (citation omitted)). "'Issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *Id.* (citing *Stewart*, 628 F.3d at 256 (citation omitted)).

In any event, the ALJ noted that Plaintiff did not receive mental health treatment from August 1, 2007, to the present. (Tr. 22, 295). However, the ALJ did consider evidence in the record from Plaintiff's primary care providers, including Dr. Kasper, and other medical sources with regard to Plaintiff's mental impairments. (Tr. 22-24). The ALJ noted that Plaintiff's July 2013 treatment records showed that Plaintiff reported that he had panic attacks "in the past," he had increasing anxiety symptoms, he had been yelling, was easily aggravated, he shook, felt chest pressure, and was short of breath. (Tr. 22, 371). The ALJ also noted that Plaintiff's primary care providers had prescribed him medications for his panic attacks and depression; that consultative examining psychologist, Dr. Cheah, diagnosed Plaintiff with anxiety disorder with mixed anxiety and depressive symptoms and assessed mild limitations in every area of mental functioning, except for moderate limitation in the ability to adapt to changes, which was incorporated into Plaintiff's RFC; that in July 2014 Dr. Kasper noted that Plaintiff complained of dysthymia and said medications, Vanlafaxine and Alprazolam, worked as far as his mood, but anhedonia continued; that in March 2015 Plaintiff reported he had a panic attack at home, but Dr. Kasper reported that Plaintiff had good judgment and normal mood; and that in June 2015 consultative examining physician, Dr. Robinson,

noted that Plaintiff had normal mood, affect, speech, and thought processes with only occasional panic attacks.  (Tr. 22-24, 299-303, 330-31, 345, 376, 378).

Thus, the record shows that the ALJ considered the entire medical record, including Dr. Kasper's treatment of Plaintiff, in determining the severity of Plaintiff's mental impairments and Plaintiff's RFC.  Accordingly, the Magistrate Judge concludes that this claim is without merit.

### 4.  The ALJ failed to provide Dr. Robinson with medical records or x-rays to review.

Plaintiff argues that, after ordering a post-hearing, consultative examination with Dr. Robinson, the ALJ erred by failing to provide Dr. Robinson with any medical records or x-rays to review.  (Docket Entry No. 12-1, at 3).  Defendant contends that the lack of additional medical records for Dr. Robinson to review did not render his report less accurate or persuasive, as Plaintiff ultimately bears the burden of proving disability.  (Docket Entry No. 16, at 9).

On December 19, 2013, Plaintiff presented to Dr. Kapser who noted, with regard to Plaintiff's back, the following: "Spine is positive for posterior tenderness.  Thoracic palpation reveals bilateral tenderness from T8 to T12.  Lumbar palpation reveals bilateral tenderness from L1 to S1.  Negative straight leg raising.  Negative elevated leg test.  Comments: Pain with flexion. Some limitation of rotation." (Tr. 363).  Dr. Kasper ordered x-rays of the thoracic and lumbar spine. (Tr. 364).  X-rays of the lumbar spine showed "multilevel degenerative disc changes of mild to moderate severity with narrowing and anterolateral osteophytic spurring" and osseous alignment was anatomic.  (Tr. 374).  No dominant focal abnormality was appreciated.  *Id.*  X-rays of Plaintiff's thoracic spine showed "mild dextroscoliosis centered at the midthoracic spine, likely positional," otherwise, osseous alignment was anatomic.  (Tr. 375).  There were "multilevel degenerative disc

changes of mild-to-moderate severity, predominantly inferiorly, with narrowing and osteophytic spurring." *Id*. Otherwise, no dominant focal abnormality was appreciated. *Id*.

On March 10, 2015, Plaintiff presented to Dr. Kasper for a follow up for back pain. (Tr. 330). Plaintiff reported that he still suffered pain, but that the increased dose of medication helped with the pain. *Id*. Plaintiff stated that the pain was in his lower back, but there was no radiation to the legs; that he felt more pain when he bent over to pick up something; and that he felt pain if he stood in one spot for too long. *Id*. Dr. Kasper noted that Plaintiff's 2013 x-rays showed multilevel degenerative disc changes of mild to moderate severity of lumbar spine and mild severity of thoracic spine with narrowing and anterolateral osteophytic spurring and that osseous alignment was anatomic. *Id*.

On May 27, 2015, at the conclusion of the ALJ hearing, the ALJ had the following colloquy with Plaintiff's attorney:

> ALJ: I would like to send you to a doctor to have a physical consultative exam done, and so he or she can check out the back issues that you're having, because that has not been done up to this point. That's what I'm thinking. So, we'll go ahead and do that. That will take about 30 days. So, we'll put in post and wait for that, and if there's any other records that you learn of, if you can get those in.

> ATTY: I did want to point out to you, too, I'm sure you saw it, but the x-ray from December of 2013.

> ALJ: That was the basis for me thinking that a CE would be good for that, because it's an x-ray that finds mild to moderate degenerative changes. So, I would like to see what a physician will say about that.

(Tr. 68).

On June 27, 2015, Plaintiff presented to Dr. Robinson for a consultative examination. (Tr. 376-87). Dr. Robinson noted that no medical records were available. (Tr. 379). Dr. Robinson listed

as Plaintiff's chief complaint, the following: "Panic attacks, memory loss, depression, posttraumatic stress disorder, anxiety, and sleep problems." (Tr. 376). As to Plaintiff's back pain, Dr. Robinson reported:

> Mr. Goppert does have some pain in his back. It is in his lower back and his lumbar back. He was told that he had degenerative osteoarthritis of the back. If he stands, if he walks, twists, turns, or any activity on his feet, he will have low back pain and he points to about L3. This does radiate into the bilateral lower extremities posteriorly as mentioned present with any activity he does. No medicine has helped him. Lying flat in bed sometimes helps.

(Tr. 376).

Upon examination, Dr. Robinson noted that Plaintiff's ranges of motion were normal except in the dorsolumbar spine; that his straight leg raise test was positive to 60 degrees on the right and 70 degrees on the left; his upper extremity pinch, grip strength, and fine and gross motor manipulation were normal; and his bilateral upper and lower extremities had full strength (5/5). (Tr. 378). Plaintiff did have some moderate cervical and lumbosacral spine tenderness to palpation, but no muscle spasm, and he had no sensory loss. *Id*. Because of back pain, Plaintiff could "do reciprocate heel-to-toe walk with some difficulty." *Id*. Dr. Robinson noted that Plaintiff walked fairly normally, but slowly; Plaintiff could not rise from a seated position without the use of his arms; and that Plaintiff had trouble getting on and off the examination table. *Id.* In his Medical Source Statement, Dr. Robinson opined that Plaintiff could lift up to 50 pounds occasionally and 20 pounds continuously; sit, stand and walk for 2 hours at a time; in an 8 hour work day sit for 7 hours, stand for 6 hours and walk for 5 hours; frequently reach with both upper extremities; handle, finger and feel continuously with his right hand; handle, finger, and feel frequently with his left hand; push/pull occasionally with his right hand; never push/pull with his left hand; and occasionally operate foot controls with both lower extremities. (Tr. 383-84). As to postural activities, Plaintiff

could occasionally climb stairs and ramps, climb ladders or scaffolds, stoop, kneel, crouch, and crawl and frequently balance. (Tr. 384).

Title 20 C.F.R. §§ 404.1517 and 416.917 authorize an ALJ to refer a claimant to a consultative examiner "to have one or more physical or mental examinations or tests." Sections 404.1517 and 416.917 provide that if the Commissioner arranges for a consultative examination the Commissioner "will . . . give the examiner any necessary background information about [the claimant's] condition." Here, Dr. Robinson noted that no medical records were available, nor does Defendant dispute that the ALJ did not send any of Plaintiff's medical records to Dr. Robinson to review. (Tr. 379, 250).

In *Brantley v. Comm'r of Soc. Sec.*, 637 F. App'x 888, 894 (6th Cir. 2016), the plaintiff argued that the ALJ's failure to provide consultative examiners with the medical records from the plaintiff's prior period of disability violated the ALJ's obligation to give examiners "any necessary background information" about the plaintiff's medical condition. The Sixth Circuit held that pertinent medical records constitute "necessary background information" under § 404.1517. The Court explained:

> In the course of discussing "background information" for consultative examinations, the POMS [Program Operations Manual System] specifically instructs SSA employees to provide consultative examiners with "duplicates or summaries of relevant evidence such as ... [m]edical evidence of record including any medical opinion(s)." Soc. Sec. Admin., *DI 22510.017 Consultative Examination (CE) Appointment Notice*, https://secure.ssa.gov/apps10/poms.nsf/lnx/042251001 (last visited Oct. 15, 2015). Additionally, the Commissioner's Hearings, Appeals and Litigation Law Manual ("HALLEX") instructs the ALJ or hearing office staff to supplement a request for a consultative examination with "[a] medical exhibits folder which contains evidence relating to the type of examination ordered with instructions for the State agency to send the folder to the consultative examiner for review." Soc. Sec. Admin., Consultative Examinations and Tests, Hearings, Appeals, and Litig. Law Manual, http://ssa.gov/OP_Home/hallex/I-02/I-2-5-20.html (last visited Oct. 15, 2015).

*Id.* at 894-95. The Court also noted that the ALJ had failed to pass along objective medical evidence, not merely subjective complaints. *Id*. at 895.

The Sixth Circuit rejected the defendant's argument that "'the examiners were still able to glean the background necessary for them to proceed with their examinations and to render professional opinions,'" stating that "even if a lack of medical records does not entirely prevent a consultative examiner from rendering 'a reasonably good estimate of his current intellectual functioning,' it can impair the examiner's ability to present his conclusions with greater precision and confidence or bolster them with references to the medical evidence." *Id*. at 895-96.

However, the Sixth Circuit found that the defendant's "prejudice argument-i.e., that even had the ALJ provided the examiners with [the plaintiff's] medical records, the ALJ would have reached the same conclusion-" was somewhat of a closer question. *Id*. at 896. Nevertheless, the Court rejected the defendant's "harmless error" argument, citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004), and stating:

> In [Wilson], we explained that the reason why enforcement of the regulation in that case was so important was that the regulation "ensures that the ALJ applies the [law]." *Wilson*, 378 F.3d at 544. In *Wilson*, we said that to excuse noncompliance simply because there is substantial evidence that a different outcome on remand is unlikely would not be right. "To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with [the regulation at issue], would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory." *Id*. at 546.

*Id*. at 896.

The Sixth Circuit explained:

> Not to reverse a decision that resulted from the ALJ's violation of the law-either negligently or otherwise-required for a fair decision would "afford the Commissioner the ability [to] violate the regulation with impunity and render protections promised therein illusory." Furthermore, an agency's failure to follow its own regulations

"tends to cause unjust discrimination and deny adequate notice contrary to fundamental concepts of fair play and due process."

*Id*. at 896-97 (citations omitted).

Here, the ALJ specifically referred Plaintiff to Dr. Robinson for a consultative examination because the December 2013 x-rays showed multilevel degenerative disc changes of mild to moderate severity of lumbar spine and mild severity of thoracic spine. Yet, the ALJ did not provide any medical records or x-rays to Dr. Robinson to review. Therefore, based upon the Sixth Circuit's analysis in *Brantley*, the Magistrate Judge concludes that under 20 C.F.R. §§ 404.1517 and 416.917 the ALJ was obligated to provide Dr. Robinson with Plaintiff's medical records and x-rays and failure to do so constituted error. *See Barnett v. Berryhill*, No. 3:16-cv-00279, 2017 WL 2537362, at *3, 4 (S.D. Ohio June 12, 2017), *report and recommendation adopted*, No. 3:16-CV-279, 2017 WL 4281126 (S.D. Ohio Sept. 27, 2017) (citing *Brantley* and holding that 20 C.F.R. § 404.1517 "triggered a mandatory procedural duty related to Plaintiff's medical records" and that remand was necessary for proper consideration of the plaintiff's claims.); *McCarter v. Berryhill*, No. 3:16-CV-385-CCS, 2018 WL 327765, at *8 (E.D. Tenn. Jan. 8, 2018).

In *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171 (6thCir. 1994), the Sixth Circuit addressed the issue of "what a district court should do once a determination is made that an ALJ erroneously applied the regulations and the [Commissioner]'s denial of benefits therefore must be reversed." *Id*. at 173. The Court concluded that "when the [Commissioner] misapplies the regulations or when there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to award benefits. The case can be remanded under sentence four of 42 U.S.C. § 405(g) for further consideration." *Id*. at 175-

76.[5]  The Court explained, "[u]nder sentence four, the court makes a final judgment, affirming, reversing, or modifying the [Commissioner's] decision and may order the [Commissioner] to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the [Commissioner's] misapplication of the regulations in the first place." *Id.* at 175. However,

> [i]f a court determines that substantial evidence does not support the [Commissioner's] decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. . . .  A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking.

*Id.* at 176.

Based upon the record, a judicial award of benefits would not be proper as neither the proof of disability is overwhelming nor is the proof of disability strong while the evidence to the contrary is lacking.  Thus, the Magistrate concludes that the ALJ's failure to comply with the Social Security Agency's ("SSA") regulations warrants remand under sentence four of 42 U.S.C. § 405(g) for proper consideration of Plaintiff's claim.

### 5.  The Court should remand based upon additional evidence.

Plaintiff argues that medical evidence attached to his brief constitutes new and material evidence regarding his mental impairments and that the Court should therefore remand this action

---

[5]Sentence four of 42 U.S.C. § 405(g) states as follows:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

under sentence six of 42 U.S.C. § 405(g) to consider Plaintiff's new and material evidence. (Docket Entry No. 12-1, at 5). The new evidence consists of a short letter dated February 23, 2017, from therapist Julia Waskiewicz, stating that Plaintiff is her patient at Centerstone and his current diagnoses include PTSD and major depressive disorder, recurrent episode, severe. (Docket Entry No. 12-2).

"Under sentence six, a district court, before making a final judgment, may order the [Commissioner] to consider additional evidence because a party presents material evidence to the court that was not previously available." *Faucher*, 17 F.3d at 175.[6] A court may "remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

---

[6]Sentence six of 42 U.S.C. § 405(g) states as follows:

The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. §§ 405(g), 1383(c)(3).

Given the Magistrate Judge's conclusion that this action should be remanded under sentence four of 42 U.S.C. § 405(g) for the ALJ's failure to comply with SSA regulations, the Magistrate Judge concludes that the Court need not consider whether Plaintiff's newly submitted evidence meets the criteria for a sentence six remand. *Duehring v. Comm'r of Soc. Sec.*, No. 14-CV-11275, 2016 WL 865844, at *6 (E.D. Mich. Mar. 7, 2016).

## IV. CONCLUSION AND RECOMMENDATION

For the reasons explained above, the Magistrate Judge **RECOMMENDS** that Plaintiff's motion for judgment on the administrative record (Docket Entry No. 11) be **GRANTED**, and the Commissioner's decision be **REVERSED**. The parties have fourteen (14) days of being served with a copy of this Report and Recommendation to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this Report and Recommendation within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, 142, *reh'g denied*, 474 U.S. 111 (1986); *see Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011).

**ENTERED** this 23rd day of January, 2018.


/s/    Joe  B.  Brown
JOE B. BROWN
United States Magistrate Judge